**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | | |
|---|---|---|
| JASON MICHAEL STEPHENS,<br><br>Plaintiff,<br><br>VS.<br><br>LONNIE LIEUPO, *et al.*,<br><br>Defendants. | : | **7 : 11-CV-33 (HL)** |

**RECOMMENDATION**

Plaintiff, who is proceeding *pro se*, filed this action pursuant to 42 U.S.C. ' 1983 on March 10, 2011, raising allegations of excessive use of force by Defendants. (Doc. 2). Presently pending in this action is Defendants= Motion for Summary Judgment. (Doc. 29).

**Background**

In his Complaint, Plaintiff alleges that following a shakedown of his dormitory, he requested to speak to a supervisor. (Doc. 2). Plaintiff states that Defendant Sergeant James Foster told Plaintiff to step out of his cell and "be handcuffed". Plaintiff then began to ask Defendant Foster several times why he needed to be handcuffed. Plaintiff asserts that at that time Defendant CERT Officer Lonnie Lieupo ran to Plaintiff and grabbed him while they both fell to the floor. Plaintiff was then restrained by Defendant Lieupo. Plaintiff maintains that Defendant CERT Officer Kiley Johnson was on Plaintiff's back and instructed Defendant Lieupo to "beat [Plaintiff's] ass", and then Defendant Lieupo hit Plaintiff repeatedly in the back of his head. Plaintiff alleges that Defendant Officer J. Cravey took Plaintiff's leg and began to bang his knee on the floor, and Defendant Johnson took Plaintiff's arm and twisted it behind his back. Plaintiff

maintains that after the incident he was taken directly to segregation without receiving medical treatment.

Defendants filed their Motion for Summary Judgment on November 21, 2011. (Doc. 29). On November 22, 2011, the Court notified Plaintiff of the filing of Defendants' Motion for Summary Judgment, advised him of his obligations under the law, and directed him to respond thereto within thirty (30) days of the date of the Court's Order. (Doc. 31). Plaintiff filed his Response to Defendants= Motion for Summary Judgment on January 24, 2012. (Doc. 34).

**Standard of Review**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Athe court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.@ A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c)(1). All facts and reasonable inferences drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007).

As the party moving for summary judgment, Defendants have the initial burden to demonstrate that no genuine issue of material fact remains in this case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The

movant Aalways bears the initial responsibility of informing the district court of the basis for its motion,@ and identifying those portions of the record, including pleadings, discovery materials, and affidavits, Awhich it believes demonstrate the absence of a genuine issue of material fact.@ *Celotex*, 477 U.S. at 323. AIf a party fails to properly support an assertion of fact or fails to properly address another party=s assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials Bincluding the facts considered undisputed B show that the movant is entitled to it@. Fed R. Civ. P. 56(e)(3).

**Evidence**

*Defendants= Evidence*

In arguing that they are entitled to the entry of summary judgment in regard to Plaintiff=s Complaint, Defendants have submitted an affidavit from Defendant Foster, a copy of the incident report, Plaintiff=s deposition testimony, portions of Plaintiff=s prison medical records, and Defendants' responses and objections to Plaintiff's interrogatories. (Doc. 29).

Defendants' evidence shows that on August 10, 2009, "Plaintiff became insubordinate by cursing at officers and making threats to do physical harm to officers" as a result of a shakedown of Plaintiff's dorm. (Doc. 29-4, Foster Affidavit, ¶ 4). Defendant Foster removed Plaintiff from his cell in order to discuss Plaintiff's complaint. (*Id.*). Due to Plaintiff's continued insubordination, he "was instructed to turn around and give his hands to be cuffed." (*Id.*). "Plaintiff was given this instruction more than once and refused each instruction." (*Id.*). Plaintiff also testified that Defendant Foster asked him several times to "turn to the wall and cuff up" and Defendants Johnson and Lieupo also asked Plaintiff to cuff up, but Plaintiff refused. (Doc. 29-3, Plaintiff's Depo., p. 28, l. 20 – p. 29, l. 4).

Hands on force was then used by Defendants Johnson and Lieupo to place Plaintiff on the ground and restrain him with handcuffs. (Doc. 29-4, Foster Affidavit, ¶ 5). While Defendants Johnson and Lieupo were restraining Plaintiff, inmate Eddie White became combative and failed to follow instructions to return to his cell. (*Id.* at ¶ 6). Inmate White ran toward Plaintiff and Defendants Foster, Johnson, and Lieupo, pushed Defendant Foster to the ground, and then jumped on Defendant Johnson who was on the floor helping restrain Plaintiff. (*Id.*).

Defendant Foster was able to secure inmate White's upper body until help arrived, and at that time inmate White and Plaintiff were handcuffed. (*Id.* at ¶ 7). Plaintiff was escorted to the segregation unit and checked by medical staff. (*Id.* at ¶ 8). Defendant Foster testified that "[n]o force was used on Plaintiff other than the force that was used to restrain and gain control of Plaintiff[.]" (*Id.* at ¶ 11). Defendants' evidence shows that Defendant Cravey was not involved in the incident.

*Plaintiff's Evidence*

In response to the Defendants' summary judgment motion, Plaintiff submitted select portions of his deposition, the internal investigations report from the alleged incident, portions of his medical records, his disciplinary report work sheets and history, and select portions of the Georgia Department of Corrections Standard Operating Procedures handbook. (Doc. 34).

Plaintiff's evidence shows that after a shakedown of Plaintiff's dorm, Plaintiff asked to speak to a supervisor because his legal work pertaining to the case on which he was convicted was left out for viewing. (Doc. 34-2, Plaintiff's Depo., p. 16, ll. 4-9). Defendant Foster asked Plaintiff to step out of the cell, and Defendant Foster "listened for a moment. And then he told [Plaintiff] to cuff up." (*Id.* at ll.11-15). Plaintiff testified that he asked Defendant Foster why he

needed to cuff up and Defendant Foster responded, "Just turn around and cuff up." (*Id.* at ll. 16-17). Plaintiff told Defendant Foster he had no reason to "cuff up", and Defendant Foster and Plaintiff "kept going back and forth" until Defendant Foster called for assistance. (*Id.* at ll. 17-19).

Plaintiff testified that Defendants Johnson and Lieupo approached after Defendant Foster called for assistance. (*Id.* at ll. 20-21). Defendants Johnson and Lieupo repeated Defendant Foster's instructions, and Plaintiff continued to explain why he was not in his cell. (*Id.* at p. 16, l. 23 – p. 17, l. 1). Defendant Lieupo then "grabbed [Plaintiff] by one of [his] arms and took [him] to the floor." (*Id.* at p. 17, ll. 3-6). Plaintiff landed on top of Defendant Lieupo, with his arms underneath Defendant Lieupo's back; Defendant Johnson was on Plaintiff's back. (*Id.* at p. 17, l. 7 – p. 18, l. 22). Defendant Johnson then instructed Defendant Lieupo to "[b]eat [Plaintiff's] ass", and Defendant Lieupo hit Plaintiff in the back left side of his head three or four times with his fist. (*Id.* at p. 18, l. 8 – p. 19, l. 8; p. 26, ll. 2-17). Plaintiff was told by Defendant Johnson to give him his hands. (*Id.* at p. 19, ll. 10-11). Plaintiff gave Defendant Johnson one hand, and Defendant Johnson twisted Plaintiff's arm and "pushed [Plaintiff's] elbow up to the back of [his] head[.]" (*Id.* at ll. 23-25). Defendant Cravey took Plaintiff's right leg and pushed it to the floor a few times, which made Plaintiff's knee hit the floor. (*Id.* at p. 25, ll. 16-21). Plaintiff testified that Defendant Cravey could have been trying to secure Plaintiff's legs at the time. (*Id.* at p. 25, l. 19 – p. 26, l. 1). Defendant Johnson handcuffed Plaintiff and pulled him up off the floor, and then another officer escorted Plaintiff to segregation. (*Id.* at p. 20, ll. 2-22).

Plaintiff testified that he was not seen by medical staff before he was taken to segregation, but a nurse made an examination through his cell door and scheduled a follow-up for Plaintiff for

the next day. (*Id.* at p. 24, ll. 15-23). As a result of the use of force, Plaintiff had injuries to the back of his head, his left shoulder, lower back, and left hip. (*Id.* at p. 32, ll. 11-14).

*Medical Evidence*

At 7:15 a.m. on the same day of the incident, Plaintiff was examined by an RN at Valdosta State Prison, and a Use of Force Assessment was completed. (Doc. 29-8; Doc. 29-3, Plaintiff's Depo., Exhibit 1). The Use of Force Assessment shows that Plaintiff had bruises on the top of both the right and left sides of his shoulders, and a bruise or abrasion to his right ribcage. (*Id.*). Plaintiff was alert, "[o]riented x3", and responded to verbal commands. (Doc. 29-8). Plaintiff was instructed to follow-up with medical as needed, and a follow-up appointment was scheduled for the following day, August 11, 2009. (*Id.*). Plaintiff was seen by Nurse Seleska on August 11, 2009, and the medical records show that Plaintiff was still having pain in his right shoulder and right rib. (Doc. 29-8). Nurse Seleska found that Plaintiff had a superficial abrasion and mild bruising in his mid-rib region. (*Id.*). Plaintiff was given Motrin, and x-rays of his right ribs and shoulder were ordered. (*Id.*).

Plaintiff was seen on August 20, 2009 for complaints of numbness in his knee and hip, and a loss of range of motion in his knees and left hip. (*Id.*). The examining nurse noted "no visible signs of distress". (*Id.*). Plaintiff was given ibuprofen, and Plaintiff was instructed to not lift heavy objects or play sports, and to apply ice to the affected areas. (*Id.*). On August 25, 2009, Plaintiff was seen again by medical. (*Id.*). The x-rays of Plaintiff's right ribs and right shoulder were negative. (*Id.*). Plaintiff was still complaining of mild left hip and knee pain, and was instructed that there would be some mild pain with a "traumatic bony event". (*Id.*). The evidence also shows that Plaintiff made no complaints during other, routine medical rounds on

August 11, 12, 13, 17, 18, 20, or 24 of 2009. (*Id.*).

**Discussion**

The Eighth Amendment forbids cruel and unusual punishment, and this prohibition governs Athe treatment a prisoner receives in prison and conditions under which he is confined.@ *Farrow v. West*, 320 F.3d 1235, 1242 (11th Cir. 2003). A[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley* [*v. Albers*, 475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.@ *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).

To establish a claim for excessive force, the Plaintiff must show that (1) the Defendants acted with a malicious and sadistic purpose to inflict harm and (2) that a more than *de minimis* injury resulted. *Fischer v. Ellegood*, 238 Fed. Appx. 428, 432 (11th Cir. 2007); *Johnson v. Breeden*, 280 F.3d 1308, 1321 (11th Cir. 2002). However, A[t]he ›core judicial inquiry= . . . [is] not whether a certain quantum of injury was sustained, but rather ›whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.=@ *Wilkins v. Gaddy*, 130 S.Ct. 1175, 1178 (2010) (quoting *Hudson*, 503 U.S. at 7). When the conduct in question resulted from an officer attempting to restore control after an inmate disturbance, an Eighth Amendment claim arises *only* if the measure taken Ainflicted unnecessary and wanton pain and suffering@ caused by force used Amaliciously and sadistically for the very purpose of causing harm.@ *Whitley*, 475 U.S. at 320.

The Eleventh Circuit has held that there are five factors that are relevant to determine if force was used “maliciously and sadistically for the very purpose of causing harm”. *Hall v. Santa*

*Rosa Correctional Institution*, 403 Fed. Appx. 479, 481 (11th Cir. 2010). The five factors include:

> (1) the extent of the injury, (2) the need for application of force, (3) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them, (4) the relationship between the need and the amount of force used, and (5) any efforts made to temper the severity of a forceful response.

*Id.*; *Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir. 1999).

The Court must give a Awide range of deference to prison officials acting to preserve discipline and security.@ *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990). Deference must also be given to prison officials who are required to make immediate decisions at the scene of a disturbance. *Id.* However, Aonce the necessity for the application of force ceases, any continued use of harmful force can be a violation of the Eighth Amendment, and any abuse directed at a prisoner after he terminates his resistance to authority is an Eighth Amendment violation.@ *Williams v. Burton*, 943 F.2d 1572,1576 (11th Cir. 1991).

AThe mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.@ *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247-48 (1986)) (emphasis in original). Herein, Defendants contend that they could not have used excessive force because the amount of force used was necessary to compel compliance and quell the disturbance that Plaintiff had caused by his insubordination. (Doc. 29-2). Plaintiff maintains that Defendants used force maliciously, and thus violated his constitutional rights. (Doc. 34).

In *Brown v. Smith*, 813 F.2d 1187 (11th Cir. 1987), the Eleventh Circuit found that a prison officer was justified in his use of force when a defendant was insubordinate in refusing to comply with verbal commands to return to his cell. *Id.* at 1189. The Court noted that the guard's attempt to secure compliance with a lawful order indicated that an effort was made to temper the severity of a forceful response. *Id.* at n. 1. Furthermore, the Court stated that because a verbal confrontation occurred between the inmate and the officer "institutional security interests" were implicated. *Id.* at n. 2.

Herein, the undisputed evidence shows that Plaintiff was insubordinate in refusing to be placed in handcuffs while he was out of his cell. (Docs. 29-4, Foster Affidavit, ¶ 4; 34-2, Plaintiff's Depo., p. 16, ll. 11-19). At the time of the use of force, Plaintiff was not restrained and was refusing to follow the orders of three prison officials. (*See id.*). Plaintiff also submitted his disciplinary history from the Department of Corrections which indicates that, after an internal investigation, Plaintiff was found guilty for failing to follow instructions, and insubordination as a result of this incident. (Doc. 34-6).

In an effort to quell the disturbance caused by Plaintiff's insubordination, Defendants Lieupo and Johnson used hands on force and took Plaintiff to the ground in order to place him in handcuffs. (Doc. 29-4, Foster Affidavit, ¶ 5). Inmate White increased the severity of the disturbance and security risk by leaving his cell, knocking down Defendant Foster, and jumping onto the back of Defendant Johnson while Defendant Johnson was attempting to handcuff Plaintiff. (*See id.* at ¶ 6).

Plaintiff did testify that he found blood on his head the day after the incident; however, he did not know if it was his or Defendant Lieupo's blood. (Doc. 29-3, Plaintiff's Depo., p. 33).

Furthermore, as a result of the incident, Defendant Foster broke his hand. (Doc. 29-4, Foster Affidavit, ¶ 9). The Court finds this evidence to be indicative of the severity of the situation, and the risk to the safety and security of the prison staff posed by both Plaintiff's and inmate White's insubordination.

Plaintiff also alleges that Defendant Lieupo and Defendant Johnson acted maliciously and sadistically to harm Plaintiff because Defendant Johnson instructed Defendant Lieupo to "beat [Plaintiff's] ass" and Defendant Lieupo struck Plaintiff in the back of his head[1]. (Doc. 34). The evidence, viewed in the light most favorable to Plaintiff, shows that Defendant Lieupo struck Plaintiff three or four times with his fist only, not with any type of instrument. (Doc. 29-3, Plaintiff's Depo., p. 26, ll. 2-17). At the time this was alleged to have occurred, Defendant Lieupo was on the bottom of a pile that included two unrestrained inmates and Defendants Johnson and Foster. (Docs. 29-4, Foster Affidavit, ¶ 6; 29-3, Plaintiff's Depo., p. 23, l. 1 – p. 24, l. 5).

The evidence indicates that the altercation between Defendants, Plaintiff, and inmate White escalated quickly and resulted in a dangerous situation that necessitated force to restrain the inmates and regain control of the situation. *See Bennett*, 898 F.2d at 1533 ("Decisions made at the scene of a disturbance to restore order are entitled to a degree of deference."). Furthermore, any possible blow to the head was minimal and did not constitute excessive force in this case. *See Sanks v. Williams*, 2009 WL 1220621, *5 (S.D. Ga. May 4, 2009) (when the plaintiff resisted

---

[1] To the extent that Plaintiff alleges Defendant Johnson's instruction to Defendant Lieupo to "beat [Plaintiff's] ass" constitutes excessive force, this claim must fail. *See Wilson v. Silcox*, 151 F.Supp.2d 1345, 1352 (N.D. Fla. 2001) ("Generally, verbal threats, without more, are insufficient to state a cause of action under the Eighth Amendment." (internal quotations omitted)).

by clawing and punching the defendant's hand, the defendant was justified in using a single punch to regain control of the situation). There is no evidence that Defendant Lieupo struck Plaintiff after Plaintiff was handcuffed, nor that Defendant Lieupo was acting maliciously when he allegedly struck Plaintiff in the back of the head.

Plaintiff has further alleged that Defendant Cravey pushed Plaintiff's knee into the floor several times. (Doc. 2). The Court notes that both Plaintiff and Defendants have provided contradictory evidence regarding the presence of Defendant Cravey during the use of force. Defendants contend that Defendant Cravey was not present during the incident, while Plaintiff testified that he was. Plaintiff testified that Defendant Cravey banged Plaintiff's knee into the floor; however, Plaintiff admits that Defendant Cravey may have been attempting to secure Plaintiff's legs while Defendant Johnson was trying to handcuff Plaintiff. (Doc. 29-3, Plaintiff's Depo., p. 25, l. 16 – p. 26, l. 1). Plaintiff does not contend that Defendant Cravey continued to use hands-on-force after Plaintiff had been restrained. Thus, if Defendant Cravey was present, he did not use force beyond that which was necessary to regain control of a situation which posed a security risk to the prison staff and inmates.

Much like *Brown*, Plaintiff's insubordination and refusal to follow instructions of three different prison officers shows that: (1) there was the need for the application of force, (2) efforts were made to temper the severity of the forceful response, (3) there was a threat to the security of the prison staff and other inmates. The undisputed evidence shows that there was a need for the application of force to compel compliance and accomplish the valid security interest of placing two insubordinate inmates in handcuffs. *See Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir.1984) ("When an inmate refuse[s] to obey a proper order, he is attempting to assert his authority over a

portion of the institution and its officials. Such refusal and denial of authority places the staff and other inmates in danger.”). Furthermore, Defendants attempted to temper the severity of a forceful response by providing several verbal commands to Plaintiff instructing him to turn around so that he could be cuffed, and by providing Plaintiff with medical treatment following the use of force. Significantly, there are also no allegations or evidence that force was used after Plaintiff was placed in handcuffs.

With respect to the “extent of the injury” factor, the medical records support Defendants’ contention that the force used was necessary to regain control of Plaintiff, and was not excessive. Plaintiff suffered bruises to his shoulders and ribcage, and general soreness in his knee and hip. While Plaintiff still complains of soreness from the incident, the medical records show that Plaintiff’s x-rays were negative, and he was treated with only Motrin/ibuprofen and ice. Also, Plaintiff made no complaints during routine medical rounds the two weeks following the alleged excessive use of force. The medical records show that, while Plaintiff may have experienced some injury, only a minimal amount of force was used during the incident.

After analyzing the factors, it appears that the force used was necessary to regain control of an insubordinate inmate. The undisputed evidence shows that the hands on force used by Defendants was for the purpose of restoring order after Plaintiff was insubordinate and refused to be placed in handcuffs. There is no evidence that force was used after Defendants regained control of the situation, or that force was used maliciously or sadistically to cause Plaintiff harm. Therefore, Defendants are entitled to summary judgment. *See McBride v. Rivers*, 170 Fed. Appx. 648, 657 (11th Cir. 2006) (affirming summary judgment when the defendants may have been able to use less force after restraining the plaintiff, but the plaintiff did not produce evidence

that the force was malicious and for the purpose of causing harm); *Sanks v. Williams*, 2009 WL 1220621 at *4 (finding the defendant acted in good faith to restore order when he used force to regain control of an inmate who physically interfered with a search of his cell).

**Conclusion**

As Plaintiff has failed to sufficiently rebut Defendants' summary judgment showing, it is the recommendation of the undersigned that Defendants' Motion for Summary Judgment be **GRANTED**. Pursuant to 28 U.S.C. ' 636(b)(1), the parties may file written objections to the recommendations contained herein with the Honorable Hugh Lawson, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

**SO RECOMMENDED**, this 4th day of June, 2012.

s/ ***THOMAS Q. LANGSTAFF***

**UNITED STATES MAGISTRATE JUDGE**

llf